UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JESSE SCOTT LAKE,<br><br>                Petitioner,<br><br>    v.<br><br>JESSICA VAZQUEZ,<br><br>                Respondent. | CASE NO. 3:17-cv-05853-BHS-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: June 1, 2018 |

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Jesse Scott Lake filed his federal Petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254, seeking relief from a state court conviction. Dkt. 1. Petitioner has claimed four grounds for relief. However, one ground is unexhausted, another is based on state, rather than federal, law, and Petitioner has not pled constitutional violations for the remaining two. Therefore, the Court recommends Petitioner's Petition be denied on all grounds.

**GROUNDS FOR RELIEF**

Petitioner raises four grounds for relief:

1) The trial court violated his due process rights by refusing to allow him to explain why he did not give police a full statement.

2) His due process rights were violated when the prosecutor admitted a redacted version of his statement to police as substantive evidence.

3) The prosecutor committed misconduct by arguing that Petitioner's post-arrest silence was substantive evidence of his guilt.

4) The trial court erred by ruling that two out-of-court conversations were hearsay and inadmissible in violation of Petitioner's right to a complete defense and right to confront witnesses against him.

**FACTS**

Petitioner was convicted of one count of first degree child molestation and two counts of second degree incest. He was sentenced to 89 months incarceration, followed by 24 months of community custody. He is currently serving his community custody sentence.

The Washington Court of Appeals summarized the facts of petitioner's case on direct review:

> [Petitioner] Lake is the biological father of SL and the stepfather of AM. AM's mother, KL, began a relationship and moved in with Lake in 1995. Shortly after KL moved in with Lake, he began touching AM inappropriately. Lake engaged in various acts of sexual contact with AM beginning when AM was in first grade and continuing until AM was 18 years old.
>
> When AM was in the tenth grade, Lake began giving her massages that would include massaging her buttocks, breasts, and vaginal area while she was naked. These massages would take place nearly every day and would typically occur in Lake's bedroom with AM lying on his bed and Lake kneeling beside the bed. During some of these massages, Lake would have AM face away from him, and she could hear him grab something from out of his dresser and then feel him thrusting into the bed. On one occasion, Lake went to the bathroom to wash his hands and AM felt an object that she suspected was a sex toy placed between Lake's mattress and box spring. Sometime later, AM looked in Lake's dresser and found a rubber vagina, a rubber mouth, and lubrication.

Lake's biological daughter, SL, had visitation with him on the weekends. SL also lived full time with Lake for approximately a year when she was in the fifth grade. Starting around this time, Lake would watch SL while she was in the shower and would follow her into her bedroom and watch as she got dressed. SL saw Lake engage in this same behavior with regard to AM. Lake would also rub both girls' buttocks and breasts while they were wearing only a towel.

In October 2008, AM began secretly dating BH. About four months into their relationship, BH became concerned that something inappropriate was taking place at AM's home based on AM's reaction when he tried to be intimate with her. BH discussed his concerns with SL, who told him that Lake was sexually abusing her and AM. The following day, BH told his father about the allegations and then reported the allegations to the police. The State charged Lake by third amended information with two counts of first degree child molestation and two counts of second degree incest for his conduct against AM and SL.

. . .

At trial, SL testified about Lake's stated reasons for touching her and AM as follows:

> [SL]: [Lake] read in a book that girls should be touched by their dad otherwise they're going to grow up and be promiscuous and feel unloved and stuff like that just because of our neglect so we need to be touched.
> [State]: Okay. And did he ever tell you that if he didn't do that, that children would grow up to be whores?
> [SL]: Yes, I was trying to put it nicely but yes, we would be sluts and whores.
> [State]: We need to know exactly what he said so you're not going to embarrass anyone here, okay?
> [SL]: Okay.
> [State]: So why don't you tell me what he said?
> [SL]: Basically we would be sluts and whores if we were not touched by our father, that the neglect would be—we would try to find it elsewhere and the only boyfriend we needed, basically, was him and we didn't need anyone else.
> [State]: Okay.
> [SL]: That basically he was our boyfriend.

Defense counsel did not object to this testimony. Then the following exchange took place later in SL's testimony:

> [State]: Would [Lake] ever call you or [AM] in front of you any derogatory names or anything like that?
> [SL]: Yes.

>[State]: What kind of names would he call you?
>[Defense counsel]: Your Honor, I'm going to object as it being not relevant and 403(b).
>[Trial court]: Overruled, you may answer the question.
>[SL]: Slut, whore.
>
>. . .
>
>During the cross-examination of BH, defense counsel asked BH to state what KL had told him during a telephone conversation. The State objected to defense counsel's question, asserting that it would elicit hearsay testimony; the trial court sustained the objection. When KL testified for the defense, defense counsel also asked her to state what she had told BH during a telephone conversation, and the trial court sustained the State's hearsay objection.
>
>During Lake's cross-examination, the State asked why he omitted certain details to the police when providing them with a written statement. Then, during redirect, defense counsel attempted to ask Lake whether he had ever been previously investigated, but the trial court sustained the State's objection based on its ruling on the State's motion in limine to exclude evidence of Lake's lack of a prior criminal history. During closing, the State argued that Lake's testimony included details that he did not give to police in his written statement.
>
>The jury returned a verdict finding Lake not guilty of first degree child molestation for conduct against SL and returned verdicts finding Lake guilty of second degree incest for conduct against SL and guilty of first degree child molestation and second degree incest for conduct against AM. Lake timely appeal[ed] his convictions.

Dkt. 9, Ex. 13 at 2-7; *State v. Lake*, No. 42202-6-II, 2013 WL 5435813 at *1-*4 (Div. II, September 24, 2013) (citations to the record omitted).

## PROCEDURAL HISTORY

Petitioner filed a direct appeal, alleging, in relevant part, that the trial court violated his due process rights by refusing to allow him to explain why he did not give police a full statement and alleging his due process rights were violated when the trial court admitted a redacted version of his statement as substantive evidence. Dkt. 9, Ex. 9. The Court of Appeals rejected Petitioner's arguments and Petitioner sought discretionary review with the Washington Supreme

Court. *Id.*, Exs. 13, 14. The Washington Supreme Court declined to review Petitioner's appeal. *Id.*, Ex. 15.

Petitioner then filed a Personal Restraint Petition ("PRP") with the Washington Supreme Court. *Id.*, Ex. 17. He argued, in relevant part, that the prosecutor committed misconduct by arguing Petitioner's post-arrest silence was substantive evidence of his guilt and the trial court erred by ruling a conversation made outside the court was inadmissible in violation of Petitioner's right to a complete defense. The Washington Supreme Court transferred the PRP to the Division II Court of Appeals (*Id.*, Ex. 18), which dismissed it as untimely (*Id.*, Ex. 19). Petitioner filed a Motion for Reconsideration (*Id.*, Ex. 20), which was transferred to the Washington Supreme Court and treated as a Motion for Discretionary Review (*Id.*, Exs. 21, 22). The Washington Supreme Court transferred the case back to the Court of Appeals with instructions to make a determination on the merits. *Id.*, Ex. 23.

The Court of Appeals again dismissed the PRP (*Id.*, Ex. 27), and Petitioner again petitioned the Washington Supreme Court for review (*Id.*, Ex. 28). That court denied review (*Id.*, Ex. 29) as well as his Motion to Modify (*Id.*, Ex. 31). Petitioner then filed this Petition, originally naming the State of Washington as Respondent. Dkt. 1. The Court has now substituted the State of Washington with the proper Respondent. Dkt. 13.

**STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

1  However, petitions under § 2254 are governed by the statute of limitations prescribed by 28

2  U.S.C. § 2244. "When a postconviction petition is untimely under state law, 'that [is] the end of

3  the matter' for purposes of § 2244(d)(2)," and the District Court will not examine the merits of

4  the petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

5                                      **DISCUSSION**

6      **I.      Personal Jurisdiction**

7          As an initial matter, Respondent argues the Court lacks personal jurisdiction over the case

8  because, when Respondent filed its Response, the State of Washington, rather than Petitioner's

9  custodian, had been named as the Respondent. Dkt. 7 at 9-10. However, the Court has now

10 ordered the appropriate Respondent be substituted. Dkt. 13. Therefore, the Court has personal

11 jurisdiction and will continue to the merits.

12     **II.     Unexhausted Claim**

13         Respondent argues that Petitioner's first ground for relief – that the trial court violated his

14 due process rights by refusing to allow him to explain why he did not give police a full statement

15 – has not been properly exhausted in the state courts. The exhaustion of state court remedies is a

16 prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). A

17 petitioner can satisfy the exhaustion requirement by providing the highest state court with a full

18 and fair opportunity to consider all claims before presenting them to the federal court. *Picard v.*

19 *Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985). Full

20 and fair presentation of claims to the state court requires "full factual development" of the claims

21 in that forum. *Kenney v. Tamayo-Reyes*, 504 U.S. 1, 8 (1992). This means that Petitioner must

22 alert the state courts to the fact he is asserting claims under the United State Constitution by

23 referencing specific constitutional provisions or citing to relevant federal case law. *Lyons v.*

24

1  *Crawford*, 232 F.3d 666, 670 (9th Cir. 2000). It is not enough that the facts supporting a federal

2  claim were presented to the state court, nor that Petitioner has brought similar state claims in

3  state court. *Duncan v. Hendry*, 513 U.S. 364, 365 (1995). Further, it is not enough to appeal to

4  broad principles such as due process or equal protection. *Hiivala v. Wood*, 195 F.3d 1098, 1106

5  (9th Cir. 1999).

6  Here, Petitioner failed to raise his first ground with the state courts. Though he mentions

7  "due process rights" in his state filings, he did not argue any federal constitutional theories and,

8  indeed, the Court of Appeals decided this ground based solely on state, not federal, law. *See* Dkt.

9  9, Ex. 9 at 12-13; Ex. 13 at 9. Because Petitioner did not place the state courts on notice he was

10 pleading violations of the federal Constitution, it cannot be said he has properly exhausted his

11 state court remedies as to this ground.

12 Nonetheless, even if Petitioner had properly exhausted this ground, it is without merit.

13 Petitioner argues his due process rights were violated when the trial court did not allow him to

14 explain his previous interactions with police. The Court of Appeals held:

15  Here, the trial court granted the State's motion in limine to exclude any evidence
   of Lake's lack of prior criminal history without objection from defense counsel.
16 Then, when defense counsel asked Lake whether he had ever been investigated
   before his arrest, the trial court sustained the State's objection based on its previous
17 ruling on the State's motion in limine. Further, defense counsel did not ask the trial
   court to revisit its prior ruling. Accordingly, Lake has failed to preserve this issue
18 for appeal and we do not address it further.

19 Dkt. 9, Ex. 13 at 9-10; *State v. Lake*, 176 Wash. App. 1037, 2013 WL 5435813 at *5 (Div. II

20 2013).

21 The state court based its decision on state evidentiary law. Further, it cannot be said that

22 in doing so the state court unreasonably applied clearly established federal law. There is no

23 clearly established law providing a defendant with a due process right to provide evidence of his

24

past interactions with police. Therefore, even if Petitioner had exhausted this ground, the state court did not unreasonably apply clearly established federal law. The Court recommends the Petition be denied as to this ground.

### III.  Exhausted Claims

Respondent does not challenge that Petitioner's remaining three grounds have been properly exhausted in the state courts. Therefore, the Court analyzes them on their merits.

#### *A. Ground Two – Admission of Written Statement to Jury*

Petitioner argues that his due process rights were violated when the prosecutor admitted a redacted version of his statement to police as substantive evidence. Habeas relief may be granted "only on the ground that [Petitioner] is in custody in violation of the constitution or laws or treaties of the United States." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). As the Supreme Court has stated "'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Thus, evidence admitted or barred at trial, even in violation of state evidentiary or procedural law, will not warrant habeas relief unless the violation also infringed on Petitioner's constitutional rights.

On direct appeal, the Court of Appeals stated:

> We hold that Lake failed to preserve this contention for appeal. At trial, Lake objected to his handwritten statement being admitted as a trial exhibit, but did not object to the statement being read to the jury. When the trial court asked for legal authority supporting Lake's position that the statement could be read to the jury but not be admitted as a trial exhibit, defense counsel asked the court to reserve its ruling until he could research the issue. Then, when the trial court revisited the issue of admitting Lake's handwritten statement as a trial exhibit, defense counsel merely renewed his previous objection, but did not provide the trial court with any additional legal authority to support his position that the statement was inadmissible as a trial exhibit. Because Lake failed to articulate a specific objection to the admission of his statement to the police as a trial exhibit, we hold that he has waived any objection to its admission on appeal.

Dkt. 9, Ex. 13 at 13; *Lake*, 2013 WL 5435813 at *7. The Washington Supreme Court declined to review Petitioner's case. Dkt. 9, Ex. 15; *State v. Lake*, 179 Wn.2d 1013 (2014).

Here, Petitioner argued that his written statement was admitted improperly. However, the challenge to the admission of the statement is an evidentiary, not a constitutional, challenge. He only argues the trial court improperly allowed this evidence to be presented to the jury. Habeas relief is only appropriate where Petitioner pleads a constitutional violation. Because Petitioner has only provided a challenge to a state evidentiary ruling without pleading a federal constitutional infringement, he has not provided sufficient grounds to grant his habeas petition. Therefore, the Court recommends that his Petition be denied as to this ground.

### B. Ground Three – Prosecutorial Misconduct

Petitioner next argues his rights were violated because the prosecutor committed misconduct by arguing to the jury that Petitioner's post-arrest silence was substantive evidence of his guilt.  When analyzing prosecutorial misconduct, the relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). A trial error is presumed to be harmless unless the error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). It is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir.1990).

Petitioner appears to take issue with the following passage in the trial prosecutor's closing argument, taking place after the prosecutor recounted Petitioner's admissions to police:

|   |   |
|---|---|
| 1 | Now here is his testimony, denies telling that to Sergeant Wada, denies telling that to Detective Camden, doesn't write out a complete statement, why? Why wouldn't he? He wasn't pressured for time, could have written as much as he wanted presumably, but he chose not to put in any of that. |

Dkt. 9, Ex. 7 at 859.

In its order dismissing Petitioner's PRP, the Court of Appeals stated:

> [Petitioner] argues that the prosecutor committed misconduct by commenting on his constitutional right to silence and by using his post-arrest silence as substantive evidence against him. But at trial, he stipulated that he never invoked his right to remain silent. Thus, there was no misconduct.

Dkt. 9, Ex. 27 at 1.

Similarly, the Washington Supreme Court found:

> [ ] Mr. Lake stipulated in writing at trial that he never invoked his right to remain silent and that all of his post arrest statements were voluntarily given. Mr. Lake now asserts by his own affidavit, and that of his wife, that he asked for an attorney after he provided statements to the police. Both affidavits contain inadmissible hearsay and are contradicted by the stipulation in the record on appeal. As to this issue, Mr. Lake fails to present sufficient competent evidence to justify a reference hearing.

*Id.*, Ex. 29 at 2.

It is true that due process forbids the prosecution from using a defendant's silence against him following his *Miranda* warnings if he invokes his right to remain silent. *Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976). However, this is not true when a defendant has waived his right to remain silent and voluntarily speaks after receiving the *Miranda* warnings. *Anderson v. Charles*, 447 U.S. 404, 408 (1980) (per curiam). Here, Petitioner filed a stipulation stating he received his *Miranda* warnings and that all statements made to police were made having waived his right to remain silent. Dkt. 9, Ex. 25, App'x D. Thus, anything he said or chose not to say after he waived his right to remain silent may properly be admitted by the state court. The state court did not unreasonably apply clearly established federal law when concluding Petitioner had not

REPORT AND RECOMMENDATION - 10

demonstrated prosecutorial misconduct. Therefore, the Court recommends Petitioner's Petition be denied as to this ground.

### C.  Ground Four – Hearsay Admissibility

Petitioner finally alleges that his 6th Amendment rights were violated when the trial court erred by ruling that two out-of-court conversations were hearsay and inadmissible in violation of Petitioner's right to a complete defense and right to confront witnesses against him. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him."  U.S. Const. Amend. VI. The Confrontation Clause guarantees criminal defendants the right to confront and cross-examine the witnesses against them. *Chambers v. Mississippi*, 410 U.S. 284, 294-95 (1973). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).

The Constitution also guarantees a criminal defendant a meaningful opportunity to present relevant evidence in his own defense at trial. *See*, *e.g.*, *Taylor v. Illinois*, 484 U.S. 400, 408 (1988); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). "The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense." *DePetris v. Kuykendall,* 239 F.3d 1057, 1062 (9th Cir. 2001) (citations omitted). However, "the right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Rock v. Arkansas,* 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973)). "[A]ny number of familiar and unquestionably constitutional evidentiary rules also authorize the exclusion of relevant evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (plurality opinion).

1   As Respondent notes, it is unclear what excluded evidence Petitioner is challenging. By
2   cross-referencing Petitioner's Petition and his PRP, the Court notes Respondent has identified
3   two different conversations: "(1) a conversation Kathy Lake ([Petitioner's] wife) had with BH
4   and (2) a conversation Kathy Lake had with AM." Dkt. 7 at 29 (citing Dkt. 9, Ex. 17 at 16-21).
5   Regarding the conversation with BH, the Court of Appeals stated "that testimony does
6   not fall within ER 801(b)(2) and was properly excluded as hearsay." The Washington Supreme
7   Court similarly found that Petitioner "fails to show that such testimony did not constitute
8   hearsay or that it would have been admissible under an exception to the hearsay rule." Dkt. 9,
9   Ex. 29 at 203 (citing ER 801(c); ER 802; ER 803). Though presented with briefing about the
10  conversation with AM, neither the Court of Appeals nor the Washington Supreme Court made a
11  determination on whether this conversation was properly excluded as hearsay. *See id.*, Exs. 13,
12  15.
13  Here, insofar as Petitioner challenges the state evidentiary ruling, it is not the duty of this
14  Court to make determinations as to whether state law was properly applied, only whether the
15  application of state evidentiary rules violated the Constitution. *Swarthout*, 562 U.S. at 220.
16  Insofar as Petitioner is challenging the exclusion as a violation of his right to confront the
17  witnesses against him or provide a complete defense, his claim is meritless. First, though
18  testimony about an out-of-court conversation was excluded, BH testified at trial and Petitioner's
19  trial counsel took the opportunity then to cross-examine him. Dkt. 9, Ex. 3 at 226-230. The
20  Confrontation Clause stands for the proposition that out-of-court statements should not be
21  admitted for their truth unless the declarant is available to testify; it does not require a trial court
22  to admit all statements of that declarant if he is placed on the stand. *See United States v. John*,
23  683 Fed. App'x 589, 594 (9th Cir. 2017) (noting an out of court statement was admissible
24

because the witness testified, but also noting the district court did not err in limiting the admissibility of the statement to impeachment purposes only). Therefore, the trial court did not violate the Confrontation Clause when it excluded the out-of-court conversation with BH based on hearsay.

Second, the state court did not violate clearly established federal law when it excluded the out-of-court conversation with AM. It is unclear what trial counsel was objecting to because counsel asked that a portion of the witness's answer be stricken without providing an explicit reason, and then added he could not see the relevance of the answer. Dkt. 9, Ex. 6 at 664-65. Assuming the trial court excluded the evidence based on relevance, irrelevant evidence is not admissible under either the Washington Rules of Evidence or the Federal Rules of Evidence (*see* Wash. ER 402; FRE 402), and, because "a trial judge has wide latitude in the admission or exclusion of evidence where the question if one of materiality of relevancy," a decision to exclude evidence will "not be disturbed unless there has been an abuse of discretion." *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 773. Petitioner has not demonstrated such an abuse here.

Assuming the trial court excluded the testimony because it was hearsay, the trial court excluded the evidence based on an evidentiary rule. Though Petitioner has the right to present relevant evidence, that right is not absolute and may bend to legitimate rules of evidence and procedure. *Rock*, 483 U.S. at 55. The rule against hearsay presumably used by the trial court is one of those rules. *Egelhoff*, 518 U.S. at 42-43 (citing FRE 802, the rule against hearsay, as an example of constitutionally acceptable rules limiting the admission of otherwise relevant evidence). Thus, because the Court owes the trial court deference in this area under AEDPA, Petitioner cannot show the trial court violated his constitutional protections when it used that rule to exclude the hearsay evidence.

Petitioner has not shown how the evidentiary determination otherwise infringed on his constitutional protections. Further, Petitioner appears to confuse the purpose of the Confrontation Clause. The Confrontation Clause ensures the State cannot present incriminating testimony from witnesses without allowing Petitioner to cross-examine them. It does not provide Petitioner a right to present out-of-court testimony in violation of state hearsay rules. Petitioner has not shown how his federal constitutional rights have been violated. Therefore, the Court recommends denying Petitioner's Petition on this ground.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

**CONCLUSION**

Further, for the reasons set forth above, the Court recommends this Petition be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 1, 2018, as noted in the caption.

Dated this 10th day of May, 2018.

David W. Christel
United States Magistrate Judge